Our next case is case number 415-0506, State of Illinois v. Stephen Wells. For the appellant we have Mr. Williams and for the appellee we have Ms. Burgess. Are you ready to proceed counsel? Thank you. May I please report? My name is James Ryan Williams and on behalf of the Office of the State Appellate Defender it is my privilege to represent Mr. Stephen Wells before this honorable court. Today I'd like to begin by discussing count 7. This was a charge that was based on the two separately packaged bags of drugs that the police found during the execution of a search warrant when they got the look in the roofing gutter of a house that Mr. Wells shared with two other individuals in a high-prime neighborhood. After finding the drugs in the roofing gutter the police mixed them to a single evidence bag. They were apparently then separated for the purposes by the crime lab whereupon it was discovered that there was in fact three grams of cocaine six grams of heroin. Then apparently these separate substances were remixed into the same evidence bag for the purposes of displaying it to the jury which ultimately became stated that at 16. Based on these drugs that were found in the roofing gutter, the state charged Mr. Wells with possession with intent to deliver 5 to 15 grams of cocaine. The state therefore had approved three elements of trial. First, that Mr. Wells had knowledge of the presence of the drugs in the roofing gutter. Second, that he had the immediate possession of control over the drugs in the roofing gutter. And third, that he intended to deliver drugs in the roofing gutter. With respect to the elements of proven by inference, based on the circumstances surrounding the possession. But here, because the drugs were not in Mr. Wells' immediate actual possession, that element also had to be proven by inference. So here we have all three elements had to be proven by inference, which the state failed to do beyond a reasonable doubt. Now given that they were found on his premises, is there a presumption related to that as far as his knowledge of the drugs and possession? Not that I'm aware of and I don't believe that that was briefed, Your Honor. But this was a constructive possession case. There are basically two ways that you can prove constructive possession. As you were just alluding to, Your Honor, the state can prove that he had exclusive control over the premises in which the drugs were found. And that nobody else had obtained possession of the drugs. With respect first to exclusive control over the premises, even if it could be argued here that Mr. Wells had joint exclusive control over the premises on top of which the drugs were found, we do not believe it can reasonably be argued that he had sufficient degree of control over the exterior of those premises such that criminal liability can attach. Again, I would note that this is a house in a high crime neighborhood. And for that end, any... How do we know that he threw the drugs up there? We don't. There's simply no proof on that point. And that actually gets to the other theory of physical control. Here there's simply no proof that Mr. Wells ever physically controlled these drugs. Nor is there proof that no one else obtained possession. Frankly... Can we look at the controlled buys? Does that allow us to draw any inference that controlled buys that he was allegedly involved in, the drugs found in the gutter, the chair in the backyard, which arguably would assist someone in reaching the gutter to retrieve the drugs? Can we draw any inferences from those things? Well, with respect to the chair, Your Honor, I would note, I would suspect many of us have chairs in our backyards. I'm not sure how... But maybe not drugs in our gutter. That's true. To that end, I would also note, Your Honor, that there were two other individuals who were present when police served this search warrant, unlike Mr. Wells. Mr. Wells was not there. These two other individuals were. Perhaps one of those individuals could have thrown the drugs up there. But with respect to whether or not we can draw inferences from these other alleged controlled buys, this was an issue that, just to be completely honest, Your Honor, I'm not sure. This seems like this would be along the lines of in violation of the prohibition on propensity evidence, because we're using evidence with respect to other crimes to prove a separate crime. But in any event, the bags of drugs in the gutter, the state represented pretrial, that they had multiple other fingerprints. I believe it was nine other fingerprints. None of these were Mr. Wells. Despite that fact, the state actually asked for, excuse me, multiple continuances, stating that their specific purpose for doing so was to identify those other prints and, therefore, perhaps exculpate Mr. Wells as to these drugs. Nevertheless, when the additional testing, I believe it was three separate sets of prints, when all of that failed to confirm the state's theory, the state admitted at trial that it made no attempt to identify those other prints. Instead, it called its own fingerprint expert to enumerate numerous reasons how Mr. Wells somehow could have touched those drugs without leaving his prints on them. So, because of these reasons, we feel that the state has failed to prove beyond a reasonable doubt that Mr. Wells constructively possessed the drugs that were found in the gutter and, for that reason, that Count 7 should be vacated outright. However, even if this court finds that Mr. Wells had knowledge of the presence of the drugs in the gutter and constructively possessed the drugs in the gutter, we still believe that the state failed to prove that he intended to distribute those drugs. The state, on this point, principally relied on the weight of the drugs. However, the state did not rely on the actual weight of the drugs, but rather it included 6 grams of heroin, which had been dismissed in Count 7, in that weight. So, although there were only 3 grams, and just be clear, it's roughly 3 grams. So, although there was only roughly 3 grams of heroin, the state, nevertheless, predicated essentially its entire case on the element of intent to distribute based on an amount of drugs that was 3 times that. And again, I would note, the state not only mixed these drugs initially, but they were apparently separated for the purposes of weighing them by the crime lab and then replaced into the same evidence bag for the purpose of displaying them to the jury. The state then called an officer to testify as an expert in drug distribution. He speculated over multiple objections that there was, in fact, 10 grams of cocaine in that bag. And to be clear, he used the words cocaine, 10 grams of cocaine. He then explained that 10 grams of cocaine is, quote, more than a user amount. When the state asked what the basis of his opinion was, he said, quote, the weight, the obvious weight in general. When the state asked why 10 grams of cocaine was not a user amount, he explained that the amount was excessive. When the state asked how many grams of cocaine, the officer explained 40 doves, a dove being like a unit of sale, if you will. He further explained that that would be worth $800 and then went on to explain that it would be unusual for a mere user of cocaine to buy $800 worth of cocaine. Again, however, all this testimony is predicated on 10 grams of cocaine, not 3 grams. Then the state actually asked how much a user would typically, how much cocaine a user would typically buy, whereupon the officer explained the user would typically buy roughly 3 grams or less, which ironically was the amount in controversy. Now, this was what, 3.65 grams of cocaine? To be honest, I don't know the exact weight. I knew it was roughly 3 grams and I know it was roughly 6 grams of heroin, but the precise numbers I wouldn't want to say. And the witness from the crime lab did accurately state for the jury the amount that was cocaine, correct? Yes, Your Honor, but I would certainly point out to the court that if you look at the colloquy of how that came out, it absolutely left open the possibility that the remaining substance was also cocaine. In fact, the individual described both substances as, I believe, a white, chunky substance. And if I recall correctly, I think the phraseology was did this contain at least 3.6 grams of cocaine? If you look at the exact colloquy, it certainly left open the possibility that all of the substance being displayed to the jury was in fact cocaine. Then the state tied all of this up and it said that if Mr. Wells, in fact, possessed 10 grams of cocaine, would that be 3 times the amount a user would typically buy, whereupon the officer stated in the affirmative. And then all of this, roughly 6 pages of testimony all predicated on 10 grams of cocaine was tied up with the officer restating that in his expert opinion, 10 grams of cocaine was a dealer amount of cocaine. And I would note here that it's not just the officer who's using the words 10 grams of cocaine, but the state itself, numerous occasions, also uses the words 10 grams of cocaine, even though the state unquestionably knew that we were dealing here with only 3 grams of cocaine. So we believe that at a minimum, the evidence here tends to prove that Mr. Wells, and of course, if the court finds that the state proved knowledge and possession, that the evidence tends to prove that he possessed a user amount of cocaine, not a dealer amount of cocaine. And we would therefore ask that if this court does not vacate Count 7 outright, that it at least reduce the Class 1 delivery to a Class 2 possession. Now, as to any conviction that this court finds that the state did prove beyond a reasonable doubt, we believe that this case must be remanded for a new trial because the cumulative impact of this case is a clear determination of his fate. Years ago, the Illinois Supreme Court explained that it is a fundamental tenet of our criminal justice system that the introduction of evidence of other crimes to show or suggest a propensity to commit crimes is an improper purpose and it is prohibited. This prohibition on propensity evidence is a particular concern, whereas here, the other crimes being referenced, being referred to, are of the exact same nature as that which the individual is on trial. And this is because, among other things, it invites the jury to engage in an improper line of reasoning that, well, if he did it before, he must have done it this time. Here, the state essentially created another crimes theme and tried Mr. Wells as a drug dealer by eliciting highly prejudicial testimony regarding the numerous prior drug transactions in the year preceding the first transaction in this case, as well as numerous testimony about the amount of drugs in controversy, which, as we just discussed, was three times that he was actually charged with. To that, with respect to the 10-gram weight, I would again note that the state specifically elicited and specifically used numerous statements regarding 10 grams of cocaine. We believe that this would be prejudicial not just to Count 7, where the state was attempting to prove that Mr. Wells possessed this with the intent to distribute, but we also believe that this would be prejudicial as to all the other crimes. Not only did it support the state's drug dealer theme, but it also bolstered the credibility of Ashley's claims that she was buying drugs from Mr. Wells. Also supporting the state's other crimes, drug dealer theme, was the testimony regarding how it was that Ashley was able to recognize Mr. Wells' voice. Rather than simply establishing by non-prejudicial means that perhaps Ashley recognized his voice from knowing him for the preceding year, the state instead elected to infect this drug dealer to recognize his voice from the, quote, numerous times that she called him at a phone number that was specifically provided for the purpose of buying cocaine. We believe that this would be prejudicial, not only because it's making reference to numerous other occasions involving the exact same crime, but it also supports the state's drug dealer theme and circumvented the prohibition on propensity evidence and invited the jury to engage in the improper reasoning that if he did it all these times before in the preceding year, he must have done it this time. Next, and also supporting the state's drug dealer theme here, was the purely propensity evidence that Mr. Wells was the exclusive supplier of Ashley's addiction in the year preceding the first buy in this case. This was purely propensity evidence. It was not offered or necessary for a continuing narrative to explain why it was that Ashley targeted Mr. Wells. That end, I would note that Ashley had already previously testified that on the morning that, or on the day, excuse me, that she became, that she was recruited by the officer to be a confidential source, that she purchased drugs from Mr. Wells on that morning. So although that limited instance of other crimes may have been admissible as a continuing narrative, this year worth of numerous other occasions where she's being exclusively supplied by Mr. Wells certainly was not necessary, but was because, again, it's involving the same crime, supports the state's drug dealer theme, it bolsters Ashley's credibility, and it, again, invites the jurors to engage in the improper line of reasoning that if he did it before, he must have done it this time. And finally, I would note that also supporting the state's other crimes drug dealer theme was the extremely prejudicial testimony that the state specifically elicited, that Ashley was only able to beat her year and a half long cocaine addiction once Mr. Wells' supply was no longer available. This was testimony that was not even arguably relevant to anything. When Ms., excuse me, when Ms. Dawson, Ashley Dawson, the confidential source, when she was able to quit using cocaine may have been relevant to establishing that she wasn't under the influence during trial, which she said she wasn't, or may have been relevant to establishing that she was or was not under the influence throughout the trial. But how she was actually able to quit, that is, because Mr. Wells was finally arrested, this was not relevant, and it was highly prejudicial because, again, we're talking about the same crime here, it supports the state's drug dealer theme, and it invites the jury to engage in bad character reasoning to suggest that Mr. Wells was this predatory drug dealer who is victimizing innocent mothers by supplying them with drugs that otherwise would have been unavailable. But didn't she testify that he wasn't her only source? On that point, Your Honor, this becomes a little bit unclear, but I think what she was explaining there was the, and I do not recall specifically which of the various controlled buys she may have been referring to, but there was reference there to her purchasing it from another individual who Mr. Wells had given the drugs to. So she perhaps arranged to make a she claimed that she arranged a drug deal through Mr. Wells, but then got actually physically received the drugs from a separate individual. I believe that's what she's referring to there, Your Honor. In sum, we believe that the cumulative effect of these numerous trial errors created a pervasive pattern of unfair prejudice that denied Mr. Wells a fair determination of his guilt. And unless this Court has any further questions? I don't see you this time. We would ask that, for all the reasons discussed today and in the briefing, that this Honorable Court remand for a new trial on all accounts that it does not find the State approved beyond a reasonable doubt. Or excuse me, that it finds the State approved beyond a reasonable doubt. Thank you for your time. Thank you, Counsel. Ms. Burgess? May it please the Court? Good afternoon. My name is Amelia Burgess and I'm appearing today on behalf of the people of the State of Illinois. Mr. Wells, the defendant in this case, was arrested and charged with eight different felony counts and ultimately was found guilty by a jury on April 2, 2015. Every single count that he was found guilty on was a felony and was eligible for extended sentencing as a class X felon, which means on any one of those felonies, a conviction subjected him to a sentence of 30 years with three years of mandatory supervised release. The trial court ultimately, based on his concurrent terms, of 30 years, finding that he lacked rehabilitative potential. However, it's important to note that while he was found guilty of eight felonies, a conviction on any single one of those felonies would result in the same end result in terms of the sentence that he was subjected to. Defendant raises two main arguments today here in requesting that this Court overrule or in some way invalidate the trial court outcome. The first is with regard to the sufficiency of the evidence and the second is with regard to the admission of evidence at trial. In both instances, the defendant faces what is best characterized as an uphill battle. With regard to sufficiency, this Court is required to look at the evidence in the light most favorable to the prosecution and to only overrule if there are significant and serious  With regard to the admissibility of evidence, likewise, this is a deferential standard of review. It is a question about whether or not the trial court abused his discretion. Defendant placed the majority of his argument with regard to the sufficiency of the evidence on Count 7, which has to do with the drugs that were found in the gutter of the defendant's home. And here, the parties both agree on the legal framework that this Court should look at in terms of However, the State would note that it is a totality of the circumstances, that it is not about removing any single factor and asking whether or not that particular factor is determinative. But when whether looking at the entire picture, it leads to the reasonable inference that defendant both knew and had possession of the drugs that were found in his gutter and also had the intent to distribute them. With regard to knowledge, it is a reasonable inference when you find drugs on the property of an individual that that individual had something to do with them being there. That is a reasonable inference a jury can draw. Further, there is additional evidence and additional facts that were heard by the jury to help substantiate this. What were those? Thank you, Your Honor. Yes, number one, there was a chair in the backyard clearly placed there based on its height and easy accessibility. Who put the chair there? The presumption would be the defendant. Why do you presume that? Based on the additional factors that support the idea that the defendant was aware that the drugs were there and had indeed placed them there. Number one, it is reasonable for the jury to infer that finding the drugs in such a location indicates an individual was trying to shield their discovery should anyone come looking. Number two, when the defendant was presented with evidence during the search that these drugs had been found, he made a statement that could be indicative of guilt. He indicated this notion that he was now in trouble because the officers had been able to find that which he had hidden. The final factor is the fact that there was evidence presented at trial that the defendant was engaged in a robust activity selling drugs. While the defendant may try to, at this point in time, refer to those other controlled buys as other crimes evidence, in this context they were not. Other crimes refers to crimes outside of those which are charged and currently being considered by the jury. And that is a separate factor. The fact that the defendant was engaged in selling drugs and there was evidence presented that he had been selling drugs to Ms. Dawson just days before the illicit materials were found in his gutter was permissible for the jury to consider in terms of whether he had knowledge of those drugs and whether he had the intent to deliver them. So those are two separate factors there. And when looking at the totality of the circumstances here, all of the factors, the fact that the drugs were found in his house, the fact that the drugs were found in a place that would indicate he was trying to conceal them from view, the fact that the defendant had been engaged in selling drugs, and the fact that the defendant made a decision that altogether would allow the jury to come to the permissible inference or the permissible conclusion that the state had met its burden of proof here. The state would of course note that any one of those factors is not determinative. However, when looking at the bigger picture, it was sufficient to allow the jury to come to the conclusion that it did. And with regard to the sufficiency of the evidence, it is relatively clear that the jury itself did not struggle with this outcome. The amount of time that the defendants had to deliver was relatively short, considering eight different felony counts and multiple individuals who were called to testify. The defendant did not touch on the other counts where he argued sufficiency of the evidence. However, I would simply note with regards to counts one through four and eight, that comes down to the credibility of the witnesses. And in this context, and when there has been a jury trial, great deference and great weight is given to the jury because it is their province to determine whether or not a witness is credible and whether or not they should give that particular witness's testimony any weight and what weight should be given. And of course, as is noted in the state's brief, here we had two competing individuals. We had the confidential source who provided clear, concise, consistent testimony that was corroborated by the investigating officers. And then, of course, we have the defendant who offered alternative testimony, but that was inconsistent, self-serving, and was ultimately subject to impeachment. So with regard to those particular counts, the state would argue that it was more than sufficient evidence to support the convictions against the defendant. Defendant also raises concerns with regard to admission of certain evidence. And as briefed by the parties, there is concerns with forfeiture and waiver with regard to many of those objections that are now being raised. And the state would certainly stand on its brief with regard to what standard and what legal framework this Court should consider. But the defendant does raise a number of concerns with regard to admission of testimony or discussions about the evidence that was presented at trial with regard to, again, that amount of the drugs that was found in the gutter. And the state would note that while there is a concern about not allowing unduly prejudicial testimony, and it is a concern taken very seriously by the state, it is an equally important concern and an equally important factor that there is no desire to sterilize the case or to remove factors that are necessary to the determination of the jury and to the jury's understanding of what happened. So in this particular instance, we have the officers testifying quite honestly that they discovered a bag of substance that appeared to be cocaine, that the total weight of that substance was a little over nine grams. But that ultimately, when that substance was tested by the state cocaine. And it all comes together full circle. And as a result, the jury was not misled at any point in time about the amount of drugs in controversy and the amount of the actual cocaine that was found in the gutter of the defendant's home. It was about 3.65 grams. Well, counsel, though, when we have a police officer to whom juries will look to for expert advice in terms of the experience a police officer has, we have an officer saying a user amount is something three or under. And here we have much more than that, almost nine or ten. Wasn't that confusing to the jury? Yes, Your Honor, that is a fair concern. However, the most risky thing that the state can do is to overstate its evidence. And so there's an equally compelling question about whether or not that testimony could have caused the jury to view the state's case as less credible. Because they heard testimony about ten grams. They heard testimony about three or less or three or more. It could have caused confusion in the jury's mind as to whether or not the defendant truly had this amount in order to distribute it or whether or not he had it for personal use. Obviously, the jury came to a conclusion that they were satisfied with the evidence. But again, it can be very risky for the state not to present very clear evidence. So to the extent that there was any confusion or any risk of confusion, it was equally likely to undermine the state's own case. However, even when looking at that, the testimony was that a user would be unlikely to purchase more than three grams. And the amount found in defendant's gutter was technically more than three grams. Although, obviously, the larger the amount, the stronger the argument that it would not be for personal use. But it wasn't an amount larger than what's typical or what the jury heard in terms of testimony. It also was far larger than the amount of the drugs purchased by Ms. Dawson. All of the drugs that were analyzed by the state crime lab in connection with those controlled buys were well under one gram. So looking again at that totality of the circumstances and the bigger picture, the jury certainly could conclude that the amount of drugs that were found in connection with defendant's property was not for his own personal use, but was for distribution to individuals like Ms. Dawson who would seek out to purchase one gram or less. Defendant also comments on the testimony from Ms. Dawson about the timing of her drug use and when she was able to stop using drugs. The state would like to note that much of this testimony was not elicited on direct examination by the state's attorney. It was, to the contrary, elicited during cross-examination in an attempt to undermine or impeach Ms. Dawson's credibility that she was using drugs during the time that she was involved in these controlled buys. And that is a reasonable trial strategy. It is understandable why the defense counsel would go down that direction. However, it did allow and did open the door to elicit additional information about when she was able to stop. And at that point in time on redirect examination, Ms. Dawson volunteered the information that she was able to stop after defendant had been arrested. This was a single line of testimony. To the extent that there was any potential for prejudice, it is highly minimal given the sufficiency of the evidence, the weight of the evidence against the defendant in this case. So even if it was error for the trial court to allow that testimony to come in, the likelihood that it caused any prejudice to defendant is negligible. As well as the likelihood that any prejudice was implicit within the proceedings. Even if all that the jury had heard was that Ms. Dawson ultimately was able to stop using drugs and that she was no longer on drugs at the time of the jury trial, the jury could still in their minds infer that it was due to the fact that the defendant had been arrested. And that is just the consequence of the type of proceeding that was before the court. And as the state has noted, that would be implicit in any type of proceeding dealing with this particular type of crime and the nature of this crime that the jury might in their minds believe that the fact defendant had been arrested reduced the amount of drugs and illicit drug sales on the street. That's why these crimes are prosecuted because they have a negative implication and negative inference to the community. As a result, the state would note that the trial court did not abuse its discretion in allowing this testimony. It was permissible for the defense counsel to elicit this on cross and because of that, it was necessary for the state to be allowed to rehabilitate its witness on redirect examination. So as a result, the state would note that it was not an abuse of discretion for the trial court to allow this testimony. And even if it was or even if there was any concern, that can be alleviated by the knowledge that it was highly unlikely to have had any result in the outcome of this case given the weight of the evidence against the defendant. As a result, the state would respectfully request that this court affirm the verdict of the jury as well as the sentence of the trial court. Thank you. Thank you, counsel. Any rebuttal, counsel? A couple of things briefly. First of all, with respect to this idea that Ashley volunteered that she was only able to quit using cocaine when Mr. Wells was I believe at least two times. How is it that your ability to quit you and I'm slightly paraphrasing, I don't have the exact quote, I'm just looking, but how is it that your ability to quit using cocaine correlated or corresponded with Mr. Wells' arrest? How that could be her answer to that, that's not being volunteered, that's being specifically elicited. With respect to the notion that Mr. Wells here actually possessed slightly more than three grams. Just to be clear, so I did confirm, I do believe it was 3.6 grams that was in possession. The officer said that users typically possess what he described as an eight ball, which was roughly three grams. I'll just note, we have looked into this and an eight ball is 3.5 grams. So basically he's possessing exactly a user amount. And then to this idea that somehow, you know, I think it was six pages, colloquy, about 10 grams of cocaine. State saying 10 grams of cocaine, officer saying 10 grams of cocaine, state restating 10 grams of cocaine. How it is that that doesn't mislead the jury, I just can't understand how that can be reasonably argued. I mean that with all due respect, but I just don't understand how it can be reasonably argued that that is in no way misleading. With respect to the issue of forfeiture, as was briefed, I don't believe any of these issues are forfeited. They were all objected to. I believe that two of them were specifically included in the post-trial motion and then of course because these are issues that go to a constitutional right, I just don't believe that they've been forfeited. With respect to the deliberation time, I don't believe counsel provided any law that that's somehow evidence of guilt. And I, if I recall correctly, I don't think we briefed this issue, but if I recall correctly, I think this court has on numerous occasions rejected that notion that somehow the jury, you know, deliberating for three days means, oh they had trouble, or the jury deliberating for a couple minutes means, oh he must have been guilty. And then finally, just with respect to resentencing, I understand that Mr. Wells could have gotten 30 years for any of these offenses individually, but the trial judge here did specifically state that she was basing the 30 years, among other things, but in large part I believe on basically the numerosity of the offenses that gave rise to these for all the challenge convictions, we do believe that this matter should be remanded for the, assuming there's no new trial in this matter, but we believe that this should be remanded for resentencing to allow the trial judge to make the initial pass on what would be the appropriate sentence. Unless this court has any further questions? No. Thank you very much for your time. Thank you counsel, we'll take this matter under advisement.